# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

ROBERT HARRY HARKINS,

    Petitioner,

vs.

JOHN MATHES, Superintendent, Mount Pleasant Correctional Facility,

    Respondent.

No. 10-CV-77-LRR

**ORDER**

_____

## *TABLE OF CONTENTS*

*I.   INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.  PROCEDURAL BACKGROUND.* . . . . . . . . . . . . . . . . . . . . . . . . . . *2*
    *A.   State District Court Proceeding.* . . . . . . . . . . . . . . . . . . . . . . *2*
    *B.   Direct Appeal.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*
    *C.   Re-Sentencing and Appeal.* . . . . . . . . . . . . . . . . . . . . . . . . *3*
    *D.   State Postconviction Relief Action.* . . . . . . . . . . . . . . . . . . . . *3*
    *E.   Federal Habeas Corpus Action.* . . . . . . . . . . . . . . . . . . . . . *4*

*III. FACTUAL BACKGROUND.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*

*IV. STANDARDS OF REVIEW.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
    *A.   Standard of Review Under 28 U.S.C. § 2254(d).* . . . . . . . . . . . . . *7*
        *1.   Requirements under 28 U.S.C. § 2254(d)(1).* . . . . . . . . . . . *8*
        *2.   Requirements under 28 U.S.C. § 2254(d)(2).* . . . . . . . . . . . *9*
    *B.   Exhaustion Requirement.* . . . . . . . . . . . . . . . . . . . . . . . . *10*

*V.  ANALYSIS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *12*
    *A.   Failure to Advise of Special Sentencing.* . . . . . . . . . . . . . . . . *12*
    *B.   Erroneous DNA Advice.* . . . . . . . . . . . . . . . . . . . . . . . . *14*
        *1.   Parties' arguments.* . . . . . . . . . . . . . . . . . . . . . . . . *14*
        *2.   Applicable law.* . . . . . . . . . . . . . . . . . . . . . . . . . *15*
        *3.   Application.* . . . . . . . . . . . . . . . . . . . . . . . . . . . *16*

*VI. CERTIFICATE OF APPEALABILITY.* . . . . . . . . . . . . . . . . . . . . . *18*

**VII.  CONCLUSION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **19**

## I.  INTRODUCTION

The matter before the court is Petitioner Robert Harry Harkins's "Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus" ("Petition") (docket no. 1).

## II.  PROCEDURAL BACKGROUND

### A.  *State District Court Proceeding*

On August 29, 2005, the State of Iowa charged Harkins with third-degree sexual abuse in violation of Iowa Code section 709.4.  On March 20, 2006, a jury trial commenced in *State v. Harkins*, No. FECR018999, in the Iowa District Court for Cedar County ("Iowa District Court").  Attorney L. Jeffrey Zearley represented Harkins throughout the trial.  At trial, Harkins testified that the alleged sexual abuse was a consensual act.  On March 21, 2006, the jury convicted Harkins.  On April 14, 2006, the Honorable J. Hobart Darbyshire sentenced Harkins to an indeterminate sentence with a maximum of ten years in prison.  Harkins appealed.

On July 21, 2006, the Iowa District Court received a letter from the Department of Corrections inquiring whether Harkins should have been sentenced to an additional special lifetime parole sentence pursuant to Iowa Code section 903B.1.  On October 17, 2006, the State filed a motion for limited remand to add the special sentence to Harkins's sentence.  On December 20, 2006, the Iowa Supreme Court denied the motion for limited remand.

### B.  *Direct Appeal*

In his direct appeal, Harkins claimed that he was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution when Zearley failed to cross-examine the victim about statements made on direct examination and when Zearley failed to argue or make an offer of proof regarding a hearsay objection at trial.  On March 28, 2007, the Iowa Court of Appeals affirmed the Iowa District Court's conviction, concluding that Zearley's failure to cross-examine the

victim did not result in prejudice and that Zearley's failure to make an offer of proof did not breach an essential duty. On May 22, 2007, the Iowa Supreme Court denied further review of Harkins's case. On May 24, 2007, procedendo issued.

### C. Re-Sentencing and Appeal

On June 8, 2007, the Iowa District Court entered a Nunc Pro Tunc Order adding the special lifetime parole provision to Harkins's sentence pursuant to Iowa Code section 903B.1. The court imposed this sentence because third-degree sexual abuse is a class "C" felony. Harkins filed a motion to correct illegal sentence on June 25, 2007, challenging the Nunc Pro Tunc Order. On August 24, 2007, the Iowa District Court held a re-sentencing hearing on the matter. The Iowa District Court reaffirmed the previous sentence and added the special lifetime parole requirement to Harkins's sentence.

Harkins appealed this sentence, arguing that: (1) Iowa Code section 903B.1 is unconstitutional; and (2) he was denied effective assistance of counsel when Zearley failed to object to the special sentence on the basis that Iowa Code section 903B.1 is unconstitutional. On July 22, 2009, the Iowa Court of Appeals affirmed Harkins's sentence, holding that Iowa Code section 903B.1 is constitutional and that Harkins's counsel was not ineffective. On June 30, 2010, the Iowa Supreme Court denied further review. On July 1, 2010, procedendo issued.

### D. State Postconviction Relief Action

On August 29, 2007, Harkins filed an Application for Postconviction Relief Pursuant to Iowa Code Chapter 822 ("Postconviction Relief Application") in the Iowa District Court. Harkins alleged that trial counsel was ineffective in the following ways: (1) Zearley failed to advise Harkins of the special sentence under section 903B.1; (2) Zearley failed to conduct a full and proper investigation of the facts; and (3) Zearley failed to preserve error by offer of proof. Additionally, Harkins filed two amendments to his Postconviction Relief Application. In the first amendment, Harkins alleged that

3

Zearley improperly disclosed to the prosecutor that Harkins admitted to having sex with the victim. In the second amendment, Harkins alleged that Zearley failed to disclose to Harkins the existence of a DNA lab report that excluded Harkins as a donor of sperm recovered from the victim. On September 19, 2008, the Iowa District Court denied Harkins's Postconviction Relief Application, finding no prejudice because: (1) Harkins's unfamiliarity with the special sentence had no relevance to his defense at trial; (2) Harkins failed to prove that Zearley did not properly investigate the facts; (3) Harkins failed to prove that Zearley improperly disclosed any information to the prosecutor; and (4) Harkins failed to prove that Zearley did not inform him of the DNA report.

Harkins appealed the Iowa District Court's decision, arguing that Zearley was ineffective in:

> (1) failing to advise him of the sentencing enhancements imposed by section 903B.1; (2) incorrectly informing him of the results of the DNA test; (3) failing to advise him not to testify in light of the results of the DNA test; and (4) disclosing his theory of defense to opposing counsel prior to trial.

*Harkins v. State*, No. 08-2048, 779 N.W.2d 495 (Table), 2010 WL 200408, at *3 (Iowa Ct. App. Jan. 22, 2010). On January 22, 2010, the Iowa Court of Appeals affirmed the Iowa District Court, concluding that Harkins did not establish prejudice. Harkins then applied to the Iowa Supreme Court for further review, which the Iowa Supreme Court denied on March 16, 2010. On March 25, 2010, procedendo issued.

### E. Federal Habeas Corpus Action

On May 5, 2010, Harkins filed the Petition. In the Petition, Harkins asserts the following grounds as a basis for relief under 28 U.S.C. § 2254:

> [(1)] Trial Counsel was ineffective for failing to advise [Harkins] he was subject to a special life sentence if convicted for the offense charged. This was admitted by trial counsel

4

> and found as a fact by the Iowa [District] Court. Iowa [District] Court found no prejudice to [Harkins].
>
> . . . .
>
> [(2)] Trial counsel was ineffective for erroneously telling [Harkins] that DNA testing had confirmed he was a donor of [male] ejaculate recovered from [the] victim; [Harkins] was in fact excluded. Trial counsel testified he could not recall what he told [Harkins]. Others testified trial counsel told them Harkins was included and thus had to testify. [Iowa] District Court found Harkins was told. Appellate Court found he was not told, but was not prejudiced.

Petition at 6, 8. On August 6, 2010, Respondent filed an Answer (docket no. 8). On November 24, 2010, Harkins filed a "Brief in Support of Application" ("Harkins's Brief") (docket no. 17). On December 10, 2010, Respondent filed a Merits Brief ("Respondent's Brief") (docket no. 18). On January 7, 2011, Harkins filed a Reply (docket no. 20). The Petition is fully submitted and ready for decision.

## III. FACTUAL BACKGROUND

The Iowa Court of Appeals summarized the facts of the case as follows:

> On August 27, 2005, Robert Harkins went out drinking with some friends. The group ended up at the home of Nichol. After a short period of time most of the group left, except for Derrick, Trisha, Harkins, and Nichol. Derrick, who was Nichol's former boyfriend, passed out on the couch. Trisha went to sleep in one of the bedrooms. Harkins laid down in Nichol's bedroom in all of his clothes. Nichol stated she believed Harkins was sleeping or passed out, so she laid down to sleep on the other side of the bed.
>
> Nichol testified Harkins rolled over on top of her, and she told him to get off. Harkins pinned Nichol down and pulled her clothing off. Nichol testified she repeatedly told Harkins no, stating, "I told him no. I told him to stop." Harkins proceeded to engage in sexual intercourse with her. When Harkins stopped she kneed him and pushed him off, then screamed at him that she had said no. Trisha heard Nichol

> say, "No, I said no." Trisha went to investigate, and met Nichol coming out of her bedroom, clad only in a blanket and crying hysterically. Trisha stated she saw blood on Nichol's bed. Harkins then left the home.
>
> Trisha and Nichol called the police, and deputy sheriff Kevin Knoche responded to the call. Deputy Knoche also saw blood on Nichol's bed. Deputy Knoche found Harkins sleeping at the home of a friend. Harkins was not wearing his underwear, but it was stuck in the fly of his pants. Harkins denied having sex with Nichol and stated he could not recall anything like that occurring.
>
> Nichol was taken to a hospital for a physical examination. Nichol had three tears, which were bleeding, in the area of the perineum. Nancy Downing, a registered nurse, testified she did not usually find tears that were that large or bleeding at the time of the exam. Downing testified Nichol's injuries were consistent with forced sexual intercourse.
>
> Harkins was charged with third-degree sexual abuse, in violation of Iowa Code section 709.4 (2005). At the trial Harkins testified he remembered everything about the evening in question. He stated he and Nichol had engaged in consensual sex. He stated that in the middle of having sex, he found out Nichol had recently had sex with Derrick, and he made a derogatory comment to her. He stated Nichol got mad and threw him out.
>
> A jury found Harkins guilty of third-degree sexual abuse. Harkins was sentenced to a term of imprisonment not to exceed ten years.

*State v. Harkins*, No. 06-0660, 734 N.W.2d 487 (Table), 2007 WL 914032, at *1 (Iowa Ct. App. Mar. 28, 2007). Additional facts will be discussed in the court's analysis where relevant.

## IV. STANDARDS OF REVIEW

### A. *Standard of Review Under 28 U.S.C. § 2254(d)*

"A state prisoner may seek a writ of habeas corpus in federal court if his confinement violates the federal Constitution or federal law." *Weaver v. Bowersox*, 241 F.3d 1024, 1029 (8th Cir. 2001) (citing 28 U.S.C. § 2254(a)). "Federal courts are 'bound by the [Antiterrorism and Effective Death Penalty Act ("AEDPA")] to exercise only limited and deferential review of underlying state court decisions' in habeas corpus cases." *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004) (quoting *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004)). A court may only grant federal habeas corpus relief "if one or both of two conditions is satisfied." *Id.* These two conditions are set forth in 28 U.S.C. § 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Thus, "[28 U.S.C. §] 2254(d) distinguishes between two types of erroneous decisions—those of law and those of fact—and treats each in separate subparagraphs." *Weaver*, 241 F.3d at 1029. Claims of legal error are governed by the first subparagraph, and claims of factual error fall within the second subparagraph. *Id.* at 1029-30.

### *1. Requirements under 28 U.S.C. § 2254(d)(1)*

Under 28 U.S.C. § 2254(d)(1), "[a] federal court may grant a state habeas petitioner relief for a claim that was adjudicated on the merits in state court only if that adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Mitchell v. Esparza*, 540 U.S. 12, 15 (2003) (per curiam) (quoting 28 U.S.C. § 2254(d)(1)).

A state court decision can be "contrary to" Supreme Court precedent in one of two ways: (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law"; or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that precedent]." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Bell v. Cone*, 535 U.S. 685, 693-94 (2002) (same); *see also Bucklew v. Luebbers*, 436 F.3d 1010, 1016 (8th Cir. 2006) (noting that *Williams* defines the terms in 28 U.S.C. § 2254(d)(1)); *Siers v. Weber*, 259 F.3d 969, 972-73 (8th Cir. 2001) (discussing *Williams*). Further, "the [statutory] phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

An "unreasonable application" of Supreme Court precedent can also arise in one of two ways. The Supreme Court explained:

> First, a state-court decision involves an unreasonable application of [the Supreme Court's] precedent if the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the Supreme Court's] precedent if the state court either unreasonably extends a legal principle from [the Supreme

> Court's] precedent to a new context where it should not apply
> or unreasonably refuses to extend that principle to a new
> context where it should apply.

*Id.* at 407. Thus, where a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," that decision "certainly would qualify as a decision 'involv[ing] an unreasonable application of . . . clearly established Federal law.'" *Id.* at 407-08 (alteration in original) (quoting 28 U.S.C. § 2254(d)(1)); *see also Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (discussing the "unreasonable application" prong of *Williams*); *Bucklew*, 436 F.3d at 1016 (same); *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999) ("An 'unreasonable application' is one that, 'evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.'" (quoting *Long v. Humphrey*, 184 F.3d 758, 760 (8th Cir. 1999))). Additionally,

> [u]nder [28 U.S.C.] § 2254(d)(1)'s "unreasonable application"
> clause, . . . a federal habeas [corpus] court may not issue [a]
> writ simply because the court concludes in its independent
> judgment that the relevant state-court decision applied clearly
> established federal law erroneously or incorrectly. Rather,
> that application must also be unreasonable.

*Williams*, 529 U.S. at 411; *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

### 2. *Requirements under 28 U.S.C. § 2254(d)(2)*

Under 28 U.S.C. § 2254(d)(2), federal habeas corpus relief "may be granted on a claim adjudicated in state court if the state court proceeding 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Beck v. Bowersox*, 257 F.3d 900, 901 (8th Cir. 2001) (quoting 28 U.S.C. § 2254(d)(2)). The state court's findings of fact are presumed to be

9

correct. *Id.* (citing 28 U.S.C. § 2254(e)(1)).[1] The burden is on the petitioner to rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Accordingly, this court's review presumes that the Iowa courts found the facts correctly unless Harkins rebuts that presumption with clear and convincing evidence. *See id.*; *see also Middleton v. Roper*, 455 F.3d 838, 845 (8th Cir. 2006) ("[The court] bestow[s] a presumption of correctness on the factual findings of the state courts, and absent procedural error, [the court] may set such findings aside 'only if they are not fairly supported by the record.'" (quoting *Simmons v. Luebbers*, 299 F.3d 929, 942 (8th Cir. 2002))); *Weaver*, 241 F.3d at 1030 ("[O]n habeas [corpus] review, we accord state trial courts broad latitude in determining questions of fact by virtue of the statutory presumption in favor of state court fact-findings."). "It bears repeating that even erroneous fact-finding by the [state] courts will not justify granting a writ if those courts erred 'reasonably.'" *Weaver*, 241 F.3d at 1030 (citing *Williams*, 529 U.S. at 405-06).

## B. *Exhaustion Requirement*

A petitioner, before obtaining federal habeas corpus review of his or her state confinement, must first "exhaust" his or her federal claims in the appropriate state forum. 28 U.S.C. § 2254(b)(1)[2]; *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991) ("[A]

---

[1] 28 U.S.C. § 2254(e)(1) provides:
> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a state court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

[2] 28 U.S.C. § 2254(b)(1) provides:
> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(continued…)

state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims."). A petitioner has exhausted his or her state remedies when he or she has provided the highest state court with a full and fair opportunity to consider all of the claims before presenting them to the federal court. *See Miller v. Lock*, 108 F.3d 868, 871 (8th Cir. 1997); *see also* 28 U.S.C. § 2254(c).[3] In Iowa, exhaustion requires a petitioner to seek discretionary review from the Iowa Supreme Court after the Iowa Court of Appeals rejects an appeal argument. *See Welch v. Lund*, 616 F.3d 756, 759 (8th Cir. 2010) ("[A]n Iowa prisoner whose appeal is deflected to the Iowa Court of Appeals must file an application for further review in the Supreme Court of Iowa to exhaust his claims properly in the state courts.").

To satisfy the fair presentment component of the exhaustion requirement, a petitioner must "'refe[r] to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" *Middleton*, 455 F.3d at 855 (quoting *Abdullah v. Groose*, 75 F.3d 408, 412 (8th Cir. 1996)). A claim is not fairly presented to the state courts unless the same factual grounds and legal theories asserted in the applicant's federal habeas corpus

---

[2](…continued)
      (A)    the applicant has exhausted the remedies available in the courts of the State; or
      (B)    (i) there is an absence of available State corrective process; or
               (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

[3] 28 U.S.C. § 2254(c) provides:
An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

application have been properly raised in his or her state court proceedings. *Palmer v. Clarke*, 408 F.3d 423, 430 (8th Cir. 2005).

"[The] exhaustion of state remedies requires that petitioners fairly presen[t] federal claims to the state courts in order to give the [s]tate the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (alteration in original) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)) (internal quotation marks omitted). If a petitioner has not fully presented his federal claims in state court, the claims are barred in federal court and must be dismissed, unless the applicant can either show: (1) both good cause for his failure to present the claims in state court and prejudice as a result of the alleged constitutional violation; or (2) that failure to consider the claim would result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749-50.

## V. ANALYSIS

Harkins argues that he is entitled to habeas corpus relief because Zearley was ineffective: (1) for failing to advise him that he would be subject to a special sentence under Iowa Code section 903B.1 if convicted of third-degree sexual abuse; and (2) for "erroneously telling [Harkins] that DNA testing had confirmed he was a donor of [male] ejaculate recovered from [the] victim." Petition at 8.

In response, Respondent argues that: (1) Harkins failed to exhaust state remedies on his claim that Zearley was ineffective for failing to advise him that he would be subject to a special sentence under Iowa Code section 903B.1; and (2) Zearley did not breach an essential duty to Harkins and any error by Zearley did not prejudice Harkins's defense.

### A. Failure to Advise of Special Sentencing

Harkins alleges that Zearley was ineffective for failing to advise him that he would be subject to a special lifetime parole sentence under Iowa Code section 903B.1. With respect to Postconviction Relief Application, the Iowa District Court determined that

12

"[Zearley] failed to advise Harkins of the [s]ection 903B.1 special sentencing in the event of conviction." *Harkins v. State*, No. PCCV033887, at 2 (Iowa Dist. Ct. Cedar Cnty. Sept. 19, 2008). The Iowa District Court further determined that, although Zearley erred by not informing Harkins about the special sentence, Harkins was not prejudiced by this error. *Id.* at 3. Harkins appealed to the Iowa Supreme Court, which deflected the case to the Iowa Court of Appeals. The Iowa Court of Appeals affirmed the Iowa District Court. *Harkins*, 2010 WL 200408, at *1. Harkins then filed an Application for Further Review ("Further Review Application"), Harkins's Appendix ("Harkins's App'x") (docket nos. 17-2 through 17-7) at 164, with the Iowa Supreme Court, but Harkins did not include the special sentencing claim in his Further Review Application. On March 16, 2010, the Iowa Supreme Court denied further review.

Harkins concedes that he did not raise this issue in his Further Review Application, stating that "[a] review of Harkins'[s] [Further Review Application] does indeed disclose that this issue was not specifically raised in that application." Harkins's Reply at 3. After reviewing the Further Review Application, the court finds that Harkins failed to raise his special sentencing ineffective assistance of counsel claim to the state's highest court. Thus, Harkins has not given the Iowa courts a "full and fair opportunity to consider" a claim that he now attempts to bring in federal court. *Miller*, 108 F.3d at 871. Finally, Harkins did not show: (1) good cause for his failure to present the claims in state court and actual prejudice; or (2) demonstrate that this court's failure to review his claim would result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 749-50. Harkins advanced no explanation as to why the claim he asserts now was not raised in his Further Review Application.

Because Harkins failed to exhaust his claim that Zearley did not advise him of the section 903B.1 special sentencing in the event of conviction, the court need not determine whether the Iowa Court of Appeals decision was either contrary to or involved an

unreasonable application of federal law. Similarly, the court need not assess whether the factual determinations underlying the decision were unreasonable in light of the evidence. Thus, the court finds that Harkins is not entitled to relief on his special sentencing ineffective assistance of counsel claim.

### B. Erroneous DNA Advice

#### 1. Parties' arguments

Harkins claims that Zearley "was ineffective for erroneously telling [Harkins] that DNA testing had confirmed he was a donor of [male] ejaculate recovered from [the] victim; [Harkins] was in fact excluded." Petition at 8. Harkins argues that, if Zearley had correctly advised him about the DNA report, Harkins would have chosen not to testify and admit to having sex with the victim on the night of the incident in question. Harkins asserts that, if he had chosen not to testify, the State would have had to prove that a sex act occurred as opposed to only proving that the sex act was not consensual. Harkins argues that the Iowa Court of Appeals decision was contrary to, and involved an unreasonable application of, the clearly established federal standard for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Additionally, Harkins argues that the Iowa Court of Appeals determination that Harkins was not prejudiced because there was overwhelming evidence of Harkins's guilt was an unreasonable determination of the facts in light of the evidence presented because there was no physical evidence of a sex act between Harkins and the victim.

Respondent argues that the Iowa Court of Appeals correctly applied *Strickland* because Zearley simply could not remember the contents of the DNA report in a deposition, there is not sufficient evidence in the record that Zearley did not tell Harkins about the DNA report and the decision to testify is a strategic decision that cannot form the basis of an ineffective assistance of counsel claim. Respondent further argues that the Iowa Court of Appeals was correct in finding that Harkins failed to show prejudice because

there is no reasonable probability that the outcome of the trial would have been different. Additionally, Respondent argues that the Iowa Court of Appeals did not unreasonably determine the facts in light of the evidence because there was overwhelming evidence of Harkins's guilt.

### 2. *Applicable law*

The Sixth Amendment provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const., amend. VI. The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." *Strickland*, 466 U.S. at 684. Thus, "the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *United States v. Cronic*, 466 U.S. 648, 658 (1984). A criminal defendant also has the right to the effective assistance of counsel on direct appeal. *See Roe v. Flores-Ortega*, 528 U.S. 470, 481-82 (2000) (citing *Penson v. Ohio*, 488 U.S. 75, 88-89 (1988)). However, "[a]bsent some effect of challenged conduct on the reliability of the . . . process, the Sixth Amendment guarantee is generally not implicated." *Cronic*, 466 U.S. at 658. "If a state court has already rejected an ineffective-assistance claim, a federal court may grant habeas relief if the decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (quoting 28 U.S.C. § 2254(d)(1)).

To establish a claim of ineffective assistance of counsel, Harkins must show that: (1) the performance of his counsel was constitutionally deficient, which requires a showing that his counsel's performance fell below an objective standard of reasonableness; and (2) the deficiency in his counsel's performance resulted in prejudice to his defense. *Strickland*, 466 U.S. at 687-88, 692. If Harkins makes an insufficient showing of one of the two components, the court is not required to address the other component. *Id.* at 697

("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

The performance inquiry requires a determination of whether counsel's assistance was "reasonable considering all of the circumstances." *Id*. at 688. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689. Therefore, a strong presumption exists that "counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. Thus, "the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

Under the prejudice prong, Harkins must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. In other words, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. The court must consider "the totality of the evidence before the judge or jury" when making the prejudice determination. *Id*.

### 3. *Application*

Harkins's erroneous DNA advice ineffective assistance of counsel claim centers on an Iowa Department of Public Safety DCI Criminalistics Laboratory DNA report, which the laboratory issued on February 23, 2006. The DNA report states that "ROBERT HARKINS was ELIMINATED as a DNA donor." Harkins's App'x at 149. In affirming the Iowa District Court's denial of postconviction relief, the Iowa Court of Appeals disagreed with the Iowa District Court's finding that "there was credible evidence that

Harkins was told and knew that he was excluded as a male donor of the sperm collected by the sexual assault evidence collection kit." *Harkins*, 2010 WL 200408, at *3. However, the Iowa Court of Appeals agreed with the Iowa District Court that Harkins had not shown prejudice, stating that, "[e]ven if Harkins ha[d] been advised concerning the lab report results and Harkins chose not to testify, there is not a reasonable probability that the outcome would have been different." *Id.*

Harkins asserts that "[t]he Iowa Court of Appeals conclusion that Harkins had failed to show prejudice[] is an unreasonable application of [the *Strickland* standard]." Harkins's Brief at 18. Harkins argues that, without his testimony, the evidence was not sufficient to prove that a "sex act" occurred between himself and the victim. Harkins asserts that this satisfies the prejudice prong of the *Strickland* standard because, "absent [Zearley's] errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695.

The court finds that it was reasonable for the Iowa Court of Appeals to conclude that there was no prejudice because, even if Harkins would not have testified, the evidence was sufficient for the jury to convict Harkins of third-degree sexual abuse. Absent Harkins's testimony, there was considerable evidence to convict Harkins, including: (1) the victim's testimony; (2) testimony from a witness who saw and overheard the incident; (3) the blood spot on the bed; (4) results of the rape examination; and (5) testimony from Deputy Knoche regarding Harkins's statements and condition upon arrest. The DNA report was consistent with the victim's testimony that she had consensual sex with another man and was later sexually abused by Harkins. The fact that Harkins was excluded as a donor of the sperm obtained during the rape examination does not exculpate him. The report only shows that Harkins's sperm was not present on the victim. Therefore, even assuming that Harkins would have chosen not to testify and the DNA report would have been admitted into evidence, there is not a "reasonable probability," *id.* at 694, that the

17

jury would have returned a different verdict. Because it was reasonable for the Iowa Court of Appeals to determine that there was no prejudice, the court finds that it is appropriate to deny Harkins's claim. Further, the court need not address whether Zearley's performance was constitutionally deficient. *See Strickland*, 466 U.S. at 697 (stating that an ineffective assistance of counsel claim may be denied solely for lack of prejudice).

Lastly, the court finds that the Iowa Court of Appeals did not unreasonably determine the facts in concluding that there was no prejudice. Harkins failed to prove by clear and convincing evidence that the Iowa Court of Appeals conclusion that there was sufficient evidence of a sex act was unreasonable. Even absent DNA evidence, there was sufficient evidence in the record, as discussed above, for the Iowa Court of Appeals to reasonably determine that a sex act occurred between Harkins and the victim. Thus, the court shall deny Harkins's erroneous DNA advice ineffective assistance of counsel claim.

## VI. CERTIFICATE OF APPEALABILITY

In a habeas proceeding before a district judge, "the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held." 28 U.S.C. § 2253(a). "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . ." 28 U.S.C. § 2253(c)(1). A district court possesses the authority to issue certificates of appealability under 28 U.S.C. § 2253(c) and Federal Rule of Appellate Procedure 22(b). *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). A certificate of appealability may issue only if "a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting 28 U.S.C. § 2253(c)(2)); *see also Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000) (per curiam) (describing standard); *Carter v. Hopkins*, 151 F.3d 872, 874 (8th Cir. 1998) (same); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (same); *Tiedeman*, 122 F.3d at 522 (same). "A substantial showing is a showing that issues are debatable among

reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569; *see also Miller-El*, 537 U.S. at 336 (explaining standard).

Courts can reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy [28 U.S.C.] § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, "the [petitioner must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, the court finds that Harkins failed to make the requisite substantial showing with respect to the claims that he has raised in the Petition. *See Miller-El*, 537 U.S. at 335-36 (stating requirement for a substantial showing). Because there is no debatable issue as to the resolution of this case, an appeal is not warranted. Accordingly, the court shall not grant a certificate of appealability under 28 U.S.C. § 2253. If Harkins desires further review of his Petition, he may request issuance of the certificate of appealability by a circuit judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman*, 122 F.3d at 522.

## VII. CONCLUSION

In light of the foregoing, the Petition (docket no. 1) is **DENIED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Respondent and against Harkins. Additionally, a certificate of appealability is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 18th day of January, 2013.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA